IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GARY BRAZEL                                                                                          PLAINTIFF

        v.                                    Civil No. 08-2034

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                               DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Gary Brazel, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## Procedural Background

The plaintiff filed his application for SSI on July 19, 2005, alleging an onset date of January 1, 2000, due to dizziness, severe chest and leg pain, post traumatic stress disorder, trouble walking or standing, trouble concentrating, memory loss, fatigue, disorientation, depression, numbness of the legs, shoulder and arm pain, stomach pain, pain of the hips, and panic disorder. (Tr. 49, 67, 71). His application was initially denied and that denial was upheld upon reconsideration. (Tr. 30, 35, 39, 40). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on May 30, 2007. (Tr. 613-627). Plaintiff was present and represented by counsel.

At this time, plaintiff was 48 years of age and possessed an seventh grade education. (Tr. 616). He had past relevant work ("PRW") as an unskilled, medium level janitor and stocker. (Tr. 21, 81-85, 617, 625).

On October 23, 2007, the ALJ found that plaintiff had a combination of severe impairments, but he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 20). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform wide range of light work activity limited to occasionally pushing/pulling and using the left upper extremity. Non-exertionally, the ALJ also determined that plaintiff could only perform work where the interpersonal contact was incidental to the work performed; the complexity of the tasks was learned by rote with few variables; the tasks required little judgment; and, the supervision required was simple, direct, and concrete. (Tr. 17-18). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a janitor and machine operator. (Tr. 22).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 28, 2008. (Tr. 5-8). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 11, 12).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

**Discussion**

Of particular concern to the undersigned is the ALJ's failure to properly consider all of plaintiff's impairments in combination when determining his RFC. The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v.*

*Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs.*, 872 F.2d 810, 812 (8th Cir. 1989). In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s physical and mental impairments. *Id. at 484, citing Reinhart v. Secretary of Health & Human Servs.*, 733 F.2d 571, 573 (8th Cir. 1984); *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979). It should be noted that Plaintiff alleged numerous impairments. Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

Records indicate that plaintiff contracted hepatitis C following a blood transfusion in the mid 1980s. (Tr. 248-273, 353-354, 411-438). As a result, he suffered from chronically elevated liver function levels. A liver biopsy in October 1998 revealed mild fatty changes and minimal lymphoid cell reaction. (Tr. 134). A follow-up biopsy was recommended, but due to a previous bad experience, plaintiff was hesitant to proceed and agreed to consider a biopsy at a later date. (Tr. 134). Doctors at the Veteran's Administration Clinic diagnosed him with cirrhosis of the liver secondary to hepatitis C and prior alcohol use.

In 1998, plaintiff was also diagnosed with thrombocythemia, the production of excess platelets leading to abnormal blood clotting or bleeding. (Tr. 471-474). Records indicate that his platelet counts continued to decrease over time, decreasing his chances for successful treatment of his hepatitis C. (Tr. 471-474). He was also told that his condition was not yet bad enough for him to be placed on the transplant list.

In July 2005, Dr. Patricia Denton at the VA treated plaintiff for right shoulder and elbow pain. (Tr. 463-467). She noted that plaintiff had failed conservative treatment, although the Flexeril helped a little. Right shoulder crepitus and pain on abduction were also noted on examination. Dr. Denton ordered and MRI and renewed plaintiff's prescription for Flexeril. (Tr. 463-467).

On September 16, 2005, an MRI of plaintiff's right shoulder revealed infraspinatus tendonitis with moderate degenerative changes of the acromioclavicular joint. (Tr. 282-283, 321-322). Mild edema of the acromion was also noted. (Tr. 282-283, 321-322).

In October 2005, testing revealed a slightly echogenic liver with prior visualization of the portal venous structures, compatible with hepatic parenchymal disease. (Tr. 408-409). Two discreet gallstones were also noted. (Tr. 408-409, 280).

On August 19, 2005, plaintiff was treated for right hip and thigh pain. (Tr. 455-457). Progress notes indicate a history of nerve damage. Plaintiff indicated that the pain worsened with sitting, standing, and walking. He rated his pain as a 6. Dr. Troxy Oxner at the VA prescribed Ultram. (Tr. 455-457).

On August 30, 2005, plaintiff underwent a general physical exam. (Tr. 155-161). Dr. James Blackmon noted a limited range of motion in plaintiff's right elbow secondary to a previous dislocation. He then opined that plaintiff would have moderate limitations sitting, standing, walking, seeing, and hearing. However, he did not define the term moderate. (Tr. 155-161).

In March 2006, a CT scan of plaintiff's abdomen showed changes consistent with cirrhosis and splenomegaly. (Tr. 228-230, 318-321, 391-393). Mildly prominent lymph nodes

5

were also present in the upper abdomen, which were believed to be highly reactive in nature. Lab tests also revealed elevated liver function levels. (Tr. 396-400).

In April 2006, hospital records indicate that a CT scan of plaintiff's lumbar spine showed bulging at the L3-4 and L4-5 levels with encroachment into the neural foramina bilaterally. (Tr. 379-390). However, there was no evidence of nerve root impingement. (Tr. 379-390).

On June 16, 2006, an MRI of plaintiff's lumbar spine revealed dessication and mild loss of height of the L1-2 discs, along with type 2 end plate changes in the L3 body and a mild diffuse bulge of the annulus disc. (Tr. 303-311, 369-371, 490-492). L4-5 level diffuse disc dessication, small foraminal protrusions of the disc, and mild bilateral L4 neural foramina stenosis with mild lower lumbar facet arthrosis were also evident. (Tr. 490-492).

On September 27, 2006, a CT scan of plaintiff's abdomen showed a cirrhotic liver, splenomegaly, gallstones, and peripancreatic, portacaval lymphadenopathy. (Tr. 505-511).

On October 5, 2006, records indicate that plaintiff's lymph nodes remained enlarged. (Tr. 527-537). The doctor opined that the likelihood of him tolerating hepatitis C therapy was low due to his low platelet count. He then increased plaintiff's dosage of Propranolol. (Tr. 527-537).

On March 20, 2007, plaintiff sought treatment after falling off of a ladder. (Tr. 538-560). He reported left hip, back, right rib cage, and chest pain. Plaintiff stated that he experienced chronic back pain and believed this injury had just exacerbated his condition. X-rays of his ribs and pelvis were normal. However, films of his lumbar spine showed degenerative disc disease at the L2-3 level. Plaintiff was prescribed Lortab. (Tr. 538-560). On March 22, Dr. Barton

Parish increased his dosage of Lortab due to his level of pain. (Tr. 592). On May 8, 2007, plaintiff reported continued pain from his left hip down to his knee. (Tr. 582-587).

In spite of this evidence, the ALJ utilized the RFC assessment of a non-examining, consultative doctor to conclude that plaintiff retained the RFC to perform a range of light work. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). However, considering all of plaintiff's impairments in combination, we believe it is reasonable to conclude that plaintiff could have also experienced limitations affecting his ability to stoop, bend, kneel, crouch, climb, and crawl. In fact, Dr. Blackmon, who examined plaintiff, indicated that plaintiff would have moderate limitations in all areas, but failed to state exactly what those limitations would be. *See* 20 C.F.R. § 416.912(e) (2006) (requiring the recontacting of a treating physician when the evidence from that physician is inadequate to determine disability). The transcript of the administrative hearing held on May 30, 2007, is a total of 14 pages long and does not contain much information concerning plaintiff's ability to perform work-related activities. Thus, aside from the RFC assessment of a non-examining doctor, there is no evidence to indicate the level of work plaintiff is capable of performing. Therefore, we believe that remand is necessary to allow the ALJ to properly consider plaintiff's impairments in combination, and to request additional information from Dr. Blackmon concerning plaintiff's exertional and non-exertional limitations.

Further, given plaintiff's back condition, hepatitis C, cirrhosis, splenomegaly, and thrombocythemia, we believe the ALJ should have requested an RFC assessment from plaintiff's treating doctor(s). Therefore, on remand, the ALJ should also address interrogatories to the

physicians who have treated plaintiff, asking the physicians to review plaintiff's medical records; to complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of April 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE